G. W. MORELAND v. R. ATCHISON AND OTHERS.

1. Conveyances of property in consideration of natural love and affection cannot be sustained against the rights and interest of antecedent creditors. (Raymond v. Cook, 31 Texas, 375.)

2. A general demurrer will not reach mere informalities in pleading.

APPEAL from Grayson.    Tried below before W. B. Brack, Esq., special judge.

Moreland instituted this suit in March, 1868, against Robert Atchison and his wife and children, for the purpose of annulling a voluntary conveyance made to the latter by Atchison in the year 1858. The petition refers to a certain suit for debt, brought by Moreland against Atchison in 1855, and still pending when the conveyance was made. That suit was twice brought to the Supreme Court, and is reported in 19th and again in 24th Texas, and finally resulted, according to the petition in the present case, in a judgment for Moreland for about twelve hundred dollars; which judgment was rendered in 1867. Execution on it being returned "no property found," the present suit was brought by Moreland to uncover the property conveyed by Atchison in his voluntary deed of 1858, so as to subject it to the plaintiff's judgment debt.

The petition alleged that the deed was "made without any valuable consideration whatever, with the fraudulent intent to defraud and cheat his (Atchison's) creditors, and especially the plaintiff,

XXXIV—22

G. W. Moreland," and charged the grantees with knowledge of the fraudulent purpose of the deed, at the time of its execution.

The defendants demurred generally to the petition.

The cause came to trial in September, 1870, when, in consequence of the disqualification of the district judge by reason of having been counsel for the plaintiff, the parties agreed on W. B. Brack as special judge to try the cause. After argument, the demurrer was sustained, and the plaintiff declining to amend his petition, there was judgment final for the defendants, and the plaintiff appealed.

*Hancock & West*, for the appellant.

*Joseph Bledsoe*, for the appellees.

*S. B. Maxey*, also for the appellees, having first quoted the second section of the Statute of Frauds (Paschal's Digest, article 3876), proceeded as follows: It will be seen that all conveyances to hinder or defraud creditors are placed on the same footing by the statute, no distinction in regard to the constituents of the fraud, or the proof required to establish it, being made between voluntary conveyances and those for valuable consideration. In both classes it is the specific design to defraud which vitiates the deed, and this design is, by the terms of the statute, an indispensable requisite. It would seem, therefore, to follow, as is held by the better authorities, that the fraud is always a question for the jury, or for the chancellor, judging, like a jury, the effect of the evidence; and that the doctrine of fraud *per se*, or such artificial force given to any circumstance as makes it conclusive and incontrovertible proof of fraud, is not in unison with the true legislative intent. The courts have indeed uniformly held that where a man indebted to insolvency conveys away his property by a voluntary deed, that is in itself sufficient proof of a fraudulent design. Nor is it probable, would his ignorance of the true

state of his affairs avoid the conclusion, because, since gross neg-
ligence is in other cases held to be criminal, so in this his reckless-
ness in disregarding the rights of others, by acting in the dark,
may very properly be held not consistent with good faith.    But
when the debtor makes but a reasonable provision for members of
his family, reserving property amply sufficient to pay all he owes,
when the settlement is made, and nothing appears to raise a sus-
picion that any secret fraudulent purpose tainted the act, in such
case it would seem as much opposed to truth and justice as to the
words of the law, to brand the transaction with fraud and annul
the deed; especially since the law recognizes natural affection as ·
a meritorious consideration, and provision for a wife and children,
as a duty, made still imperative by the contingencies and reverses
to which the lives and fortunes of men are subject.    The current
of authorities appears to sustain these principles, though some de-
cisions are adverse; because, as was well said in Jones v. Boulter,
1 Cox R., 294, " an artificial construction has entangled courts of
justice, namely, that a voluntary conveyance of a person indebted
at the time is to be deemed fraudulent."

Chancellor Kent, in Reade v. Livingston, 3 Johns. Ch., 500,
held that " if the party is indebted at the time of the voluntary
settlement, it is to be presumed to be fraudulent in respect to such
debts, and no circumstance will permit those debts to be affected by
the settlement, or repel the legal presumption of fraud."    This is
perhaps the most important case in support of that doctrine of
fraud *per se*.    It has, however, in effect been overruled in New
York by late decisions.    Thus in Verplank v. Sterry, 12 Johns.,
586, Judge Spencer held that " if the grantor be not indebted to
such a degree as the settlement will deprive the creditors of an
ample fund for the payment of their debts, the consideration of
natural love and affection will support the deed, although a vol-
untary one against his creditors, for, in the language of the de-
cisions, it is free from imputation of fraud."    So Judge Story, in

his Equity Jurisprudence, § 304, remarks: "The same doctrine has been expressly held on different occasions by the judges of the Supreme Court of New York ; and in the latest case on this subject it has been expressly affirmed that neither a creditor nor a purchaser can impeach a conveyance, *bona fide* made, founded on natural love and affection, and free from the imputation of fraud, or where the grantor had, independent of the property, granted an ample fund to satisfy his creditors," citing Jackson v. Town, 4 Cowen, 604 ; Verplank v. Sterry, 12 Johns., 526. Such, also, according to Story, (see § 362,) is the rule followed by the Supreme Court of the United States, and such, too, the English doctrine.

"In the latest English case touching this subject, it was unequivocally held that a voluntary deed, made in consideration of love and affection, is not necessarily void as against the creditors of the grantor upon the common law or the statute of Elizabeth ; but that it must be shown from the actual circumstances that the deed was fraudulent, and necessarily tended to delay or defeat creditors." (Id. § 365, citing Gale v. Williamson, 8 Mees. & W., 405.) So Lord Mansfield in Cadogan v. Kennet, Cowper, 434 : " The question in every case, therefore, is, whether the act done is a *bona fide* transaction, or whether a trick or contrivance to defeat creditors."

To like effect Doe v. Routledge, Cowper 708–10. See for a full description of this subject, with a review of authorities, English and American, to the time when he wrote, Story's Eq. Jur., §§ 352–365. Later English cases which we have seen, holding voluntary conveyances void, were cases of actual fraud, or where the grantor was greatly embarrassed, if not actually bankrupt, and left no sufficient means to satisfy creditors. (Goldsmith v. Russell, 31 Eng Law and Eq. R., 603; Olliver v. King, 35 Id., 313; *In re* Magawley's Trust, 7 Id. 269.) This last may be referred to as showing how far the English courts are disposed to go in resisting conclusions of fraud by mere intendment. E. mort-

gaged a policy of insurance, October 11, 1837, to a creditor, who held remainder in trust at M.'s disposal. E. died insolvent, December 30, of same year. In suit by creditor to appropriate the trust fund, Sir J. Parker said there was no *certain proof* that the debts existed when the mortgage was made, which he therefore sustained throughout.

The Texas decisions seem uniformly to exhibit cases of actual fraud, or a degree of indebtedness which leads necessarily to such a conclusion, in order to set aside a deed as fraudulent, whether voluntary or to preferred creditors. The cases are numerous, and only a few will be cited, without analysis: Reynolds v. Lansford, 16 Texas, 293; Wright v. Sims, 16 Id., 84; Linn v. Wright, 18 Id., 317; Hancock v. Horan, 15 Id., 507; Baldwin v. Peet, 22 Id., 703; Smith v. Boquet, 27 Id. 513. They are also explicit upon the point that fraud is a question for the jury.

"The specific malicious, covinous, guileful intention to hinder, delay or defraud creditors is a question of fact to be ascertained upon evidence, as other facts are in our courts, submitted to a jury." (Baldwin v. Peet, *supra.*)   "It is not enough that a conveyance be upon good consideration, it must be *bona fide* also, and not made to hinder, delay or defraud creditors. Whether the conveyances were so made and intended was the material issue submitted for the decision of a jury." (Castro v. Illies, 13 Texas, 503.)   Other cases are equally clear.

WALKER, J.—The court erred in sustaining the general demurrer to the petition. Conveyances in consideration of natural love and affection cannot be supported against the interest and rights of prior creditors. (Raymond v. Cook, 31 Texas, 375.)

A general demurrer will not reach mere informalities in pleading in this State. It has been so decided in several cases. (See Frosh v. Swett, 2 Texas, 485; Wells v. Fairbanks, 5 Texas, 586; Warren v. Bailey, 7 Texas, 519.)

This cause is therefore reversed and remanded.

Reversed and remanded.