PAULINE B. JOLLY v. FIDELITY UNION TRUST COMPANY ET AL.

No. 4810.   Decided October 12, 1927.   November 21, 1928.
(298 S. W., 530, 10 S. W., 2d Series, 539.)

*Kay, Akin & Smedley,* for appellant.

The notes were not extended (except possibly one of them, to July 10, 1919), because there was no sufficient written and signed acknowledgment, as required by Article 5539, Revised Statutes 1925. Article 5539, R. S., 1925; Poythress v. Ivey, 203 S. W., 103; Konz v. Pratt, 249 S. W., 258; Wolters v. Farmers Life Ins. Co., 255 S. W., 666. The statute terminating liens was not suspended by Article 5538, Revised Statutes 1925, this not being a suit against the estate or heirs of E. R. Holden. Acers v. Acers, 56 S. W., 196; Scofield v. Douglas, 30 S. W., 817, 820; Charbonneau v. Bouvet, 98 Texas, 167, 82 S. W., 460; Davis v. Dixon, 61 Texas, 446. If Article 5538 does apply to this case, it does not operate to suspend the statute, because the burden of bringing itself within the exceptions created by that article was on the plaintiff, and it offered no evidence to prove whether or not an executor or administrator had qualified, and if so, when. Travis v. Hall, 95 Texas, 116, 65 S. W., 1077; Huff v. Crawford, 88 Texas, 368, 373, 30 S. W., 546; Raley v. D. Sullivan & Co., 207 S. W., 906; Sabine Valley Timber Co. v. Cagle, 149 S. W., 697, 700; Corley v. Anderson, 23 S. W., 839; McConico v. Thompson, 47 S. W., 537; Elcan v. Childress, 89 S. W., 84; Neal Com. Co. v. Golston, 197 S. W., 1125; Coles v. Kelsey, 2 Texas, 542; Cain v. Bonner, 108 Texas, 399, 194 S. W., 1098. The lien, if it ever existed, ceased to exist under Article 5693, Revised Statutes, 1911, and was never extended as required by Article 5695; or, in other words, that there can be no implied extension of a mortgage lien on real estate. Art. 5693, R. S., 1911 (Art. 5523, R. S., 1925); Art. 5695, R. S., 1911 (Art. 5522, R. S., 1925); J. W. Watson v. First National Bank of Coleman, 285 S. W., 1050; Hoya v. Self, 245 S. W., 424; Adams v.

Harris, 190 S. W., 245; McCracken v. Sullivan, 221 S. W., 337; Templeman v. Kempner, 223 S. W., 293; Perkins v. Sterne, 23 Texas, 561, 564; Pecos Mercantile Co. v. McKnight, 256 S. W., 933; Bunn v. City of Laredo, 245 S. W., 426; Cathey v. Weaver, 111 Texas. 515, 242 S. W., 447; McCombs v. Cleveland State Bank, 244 S. W., 1042; McKinney v. Freestone County, 291 S. W., 529.

*Edward R. McGlynn, Reuben Loftin,* and *W. G. Eustis,* for appellee.

That contract is a contract in writing: Martin v. Roberts, 57 Texas, 564, 568; Clegg v. Brannan, 111 Texas, 367, 234 S. W., 1076, 1077, 1078; Benson v. Ashford, 216 S. W., 283.

That contract of extension is binding between the parties without being recorded: Watson v. First National Bank, 285 S. W., 1050; Amonette v. Taylor, 244 S. W., 238; Templeman v. Kempner, 223 S. W., 293.

That limitation did not begin to run against any of the five notes until the last one became due: Citizens' Nat'l Bank of Hillsboro v. Graham, 275 S. W., 997; Vernon-Sayles Statutes of 1914, Article 5695; State Nat'l Bank of Ft. Worth v. Stratton-White Co., 50 S. W., 631; Benson v. Phillips, 87 Texas, 578, 29 S. W., 1061; Lee v. Lewis, 287 S. W., 115, 117; Ward v. Scarborough, 236 S. W., 234; Watson v. First Nat'l Bank of Coleman, 285 S. W., 1050.

That death of Edward R. Holden suspended limitation one year: Low v. Felton, 84 Texas, 378, 382, 19 S. W., 693; Carter v. Hussey, 46 S. W., 270; Groesbeck v. Crow, 91 Texas, 74, 40 S. W., 1028; W. J. Lemp Brewing Co. v. La Rose, 50 S. W., 460; Cyc. 25, p. 1278.

It was not necessary for appellee to prove that no executor or administrator was appointed or qualified, but it devolved upon appellant to prove that there was an administrator or executor appointed to prevent the suspension of the statute. Articles 3327, 3711, Vernon-Sayles Statutes provides how this proof may be made. Low v. Felton, 84 Texas, 378, 382, 19 S. W., 693; Carter v. Hussey, 46 S. W., 270; Groesbeck v. Crow, 91 Texas, 74, 40 S. W., 1028; Lemp Brewing Co. v. La Rose, 50 S. W., 460; Cyclopedia of Law, Volume 25, page 1278; Articles 3327, 3711, Vernon-Sayles Statutes; Willis v. Chowning, 90 Texas, 617, 40 S. W., 395.

The substance of appellant's statement and argument is that article 5693, Vernon-Sayles Statutes, repeals articles 5702, 5704,

6824, and all other limitation statutes by implication. The contrary has been expressly decided in Watson v. First Nat'l Bank, 285 S. W., 1050; Vernon-Sayles Statutes 1914, Articles 5693, 5695, 5702, 5704, 6824; Revised Statutes, 1925, Articles 5523, 5520, 5522, 5537, 5538, 6627; Watson v. First Nat'l Bank, 285 S. W., 1050.

MR. JUDGE BISHOP delivered the opinion of the Commission of Appeals, Section A.

This case is submitted on Certified Questions from the Court of Civil Appeals for the Second Supreme Judicial District. The statement so far as pertinent and the questions certified are as follows:

"In the district court of Clay County the Fidelity Union Trust Company, a corporation incorporated under the laws of the state of New Jersey, recovered a judgment against Mrs. Pauline B. Jolly, a feme sole, foreclosing a mortgage lien on eight tracts of land, aggregating 1519 acres, situated in Clay County, Texas, to satisfy an indebtedness of $16,325.00, principal and interest, and $1,632.50 attorneys' fees, as the amount due on certain notes hereinafter mentioned. From that judgment Mrs. Jolly has appealed.

"The record shows that on March 5, 1917, William B. Jolly and Pauline B. Jolly, husband and wife, conveyed the property in controversy to Edward R. Holden of the Borough of Manhattan, City, County and State of New York, for a recited consideration of the sum of $1.00 in hand paid. The deed also contained the usual warranty of title and shows to have been executed in the State of New York, County of New York.

"Edward R. Holden was the brother of Mrs. Pauline Jolly and the deed was executed to him to enable him to borrow money on the land to relieve his financial necessities existing at that time. On June 15, 1917, Edward R. Holden executed to the New York Suburban Land Company a mortgage lien on the same property to secure it in the payment of promissory notes in various amounts, aggregating $75,000.00, to be executed by Edward R. Holden and endorsed by the New York Suburban Land Company to the Union National Bank of New York City. That mortgage was executed in the City of New York, County and State of New York, and was duly acknowledged as required by the statutes of this state. It was filed for record in the office of the county clerk of Clay County, Texas, on March 4, 1918; acting under and by virtue of that mortgage, the Union National Bank of New York City loaned

to Edward R. Holden the amounts shown by the following promissory notes of Edward R. Holden, the loans being made on the dates of the respective notes:

"'Note for $2500.00, dated July 10, 1918, due 6 months after date.

"'Note for $2500.00, dated July 22, 1918, due 6 months after date.

"'Note for $2500.00, dated August 22, 1918, due 6 months after date.

"'Note for $2500.00, dated September 23, 1918, due 6 months after date.

"'Note for $5000.00, dated November 25, 1918, due 6 months after date.'

"On March 5, 1917, which was the same day that Mrs. Jolly and her husband executed the deed of conveyance to Edward R. Holden, mentioned above, he reconveyed the land to Pauline B. Jolly for a recited consideration of $1.00 paid and with warranty of title. That deed was duly acknowledged before a notary public on the same day it was executed, and it was duly filed for record in the office of the county clerk of Clay County on March 19, 1918, 15 days after the recording of the mortgage above mentioned.

"The Union National Bank made the loans to Edward R. Holden without actual notice that the land had been reconveyed to Mrs. Jolly. On December 24, 1918, Mrs. Jolly wrote the following letter to the Union National Bank:

"'New York, December 24, 1918.

Mr. Wm. Sheerer,
President, Union National Bank,
Newark, N. J.
Dear Mr. Sheerer:—

In accordance with a conversation that I had with you yesterday, December 23rd, regarding the loan of $17,500.00, on my property in Texas, I beg to say that I fully confirm the same herewith, and will thank you to limit the loan to what has already been made on the property, namely $17,500.00.

Wishing you the compliments of the season, I am

Yours very truly,

(Signed)   PAULINE B. JOLLY.'

"After the receipt of that letter the Union National Bank made no more loans to Edward R. Holden.

"On January 9, 1919, E. R. Holden wrote the Union National Bank the following letter:

" 'Union National Bank,
Broad Street,
Newark, N. J.                    Attention Mr. Hansen.
Gentlemen:

Herewith enclosed please find our check for $77.17, same being in payment. for six months interest in advance, on our note that became due on January 10th. This and several other notes held by the bank are not to be paid or taken up with new notes, but are to be held by the bank, we paying the interest thereon as they become due, until such time as it becomes convenient for us to pay these notes, one by one. These particular notes are secured by a mortgage held by the bank, and bear the following dates:

| | | | | |
|---|---|---|---|---|
| July | 10th, | 1918, | for | $2,500.00 |
| " | 22 | " | " | " |
| Aug. | 22 | " | " | " |
| Sept. | 23 | " | " | " |
| Nov. | 25 | " | " | 5,000.00 |

Total            $15,000.00

We recite and tabulate these particular notes so that their status may be fully understood.

Very truly yours,
NEW YORK SUBURBAN LAND COMPANY,
(Signed)    E. R. Holden.'

"The bank made no written reply to the last letter, but after its receipt it carried on its books the following account:

" 'Date July 10, 1918.   $2,500.00

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| E. R. Holden | due Jan. 10, 1919 | int. | $76.67 | pd. in advance | | | |
| Jan. 10, 1919, extended six months | " | 76.67 | " | " | " | | |
| July 14, 1919, | " | " | " | " | 77.50 | " | " | " |
| Jan. 10, 1920, | " | " | " | " | 76.25 | " | " | " |
| July 12, 1920, | " | " | " | " | 77.17 | " | " | " |

entered in past due paper Jan. 10, 1921, interest billed monthly thereafter.

" 'Date July 22, 1918.   $2,500.00

| | | | | | |
|---|---|---|---|---|---|
| E. R. Holden | due Jan. 22, 1919 | int. | $76.67 | paid in advance | |
| Jan. 23, 1919, extended six months | " | 76.25 | " | " | " |
| July 22, 1919, | " | " | " | " | 76.67 | " | " | " |

Jan. 22, 1920,   "   "   "   "   76.25   "   "   "
July 22, 1920,   "   "   "   "   76.67   "   "   "
entered in past due paper Jan. 22, 1921, interest billed monthly thereafter.

        " 'Date August 22, 1918.   $2,500.00
E. R. Holden   due Feb. 24, 1919   int.   $77.50 paid in advance
Feb. 25, 1919, extended six months   "   76.25   "   "   "
Aug. 25, 1919,   "   "   "   "   76.67   "   "   "
Feb. 25, 1920,   "   "   "   "   75.83   "   "   "
Aug. 25, 1920,   "   "   "   "   75.83   "   "   "
entered in past due paper Feb. 25, 1921, interest billed monthly thereafter.

        " 'Date Sept. 23, 1918.   $2,500.00
E. R. Holden   due March 24, 1919   int.   $75.83 paid in advance
March 27, 1919, extended six months   "   77.50   "   "   "
Sept.   24, 1919,   "   "   "   "   75.83   "   "   "
March 24, 1920,   "   "   "   "   76.67   "   "   "
Sept.   24, 1920,   "   "   "   "   75.00   "   "   "
entered in past due paper March 23, 1921, interest billed monthly thereafter.

        " 'Date November 25, 1918.   $5,000.00.
E. R. Holden   due May 26, 1918   int. $151.67 paid in advance
May 27, 1919, extended six months   "   153.33   "   "   "
Nov. 26, 1919,   "   "   "   "   151.67   "   "   "
May 26, 1920,   "   "   "   "   153.31   "   "   "
entered in past due paper November 26, 1920, interest billed monthly thereafter.

"Edward R. Holden died October 24, 1920, leaving E. R. Holden, Jr., his sole heir at law, and there was no proof of an administration on his estate, either through an executor or administrator.

"The plaintiff in this case became the legal owner of all those notes as successor to the Union National Bank, the two corporations being one and the same in interest.

"Plaintiff prayed for a foreclosure decree on the land to satisfy the debts evidenced by the notes, as against Edward R. Holden, Jr., residing in the state of New York, and Percy H. Neville, William J. Neville and Charles Burney, residing in Clay County, Texas, who were also made defendants as well as against Mrs. Jolly. Later the suit was dismissed as to E. R. Holden, Jr.

"The foreclosure was decreed against defendants Percy H. Neville, William J. Neville and Charles Burney, as well as against Mrs. Jolly, but no appeal was prosecuted by those defendants, and no complaint is made in this court by them of the judgment.

" * * * Mrs. Jolly filed an answer, which, among other defenses, contained a plea of the statute of limitation of four years against plaintiffs' demand of foreclosure of the lien as against her, alleging in the same plea that the notes for which the lien was given all matured more than four years prior to the institution of the suit, and were therefore likewise barred by the four years statute of limitation. This suit was instituted April 8, 1925.

" * * * Plaintiff further pleaded that the maturity of each of the notes alleged above was, by written contract made with E. R. Holden, the maker, extended from time to time as shown in the written statement of the account copied above, and that the suit was instituted within four years next after the maturity of each and all of said notes. Plaintiff further alleged the death of Edward R. Holden on October 24, 1920, and that by reason of his death the running of the statute of limitation was suspended one year beginning October 24, 1920, and ended October 24, 1921, and by reason of such suspension none of the notes were barred by the statute of four years limitation.

* * * * * *

"We also call your attention to the following articles of the statutes:

" 'Art. 5538. In case of death of any person against whom or in whose favor there may be a cause of action, the law of limitation shall cease to run against such cause of action until twelve months after such death, unless an administrator or executor shall have sooner qualified according to law upon such deceased person's estate; in which case the law of limitation shall only cease to run until such qualification.'

" 'Art. 5539. When an action may appear to be barred by a law of limitation, no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the case out of the operation of the law, unless such acknowledgment be in writing and signed by the party to be charged thereby.'

* * * * * *

"Under the facts recited above, all of which have been duly established by proof and recited in the trial court's findings of facts,

we deem it advisable to certify to your Honors the following questions for your determination:

1. Did the writing of the letter by Edward R. Holden, Sr., to the bank offering to pay interest in advance on the notes and the acceptance by the bank of advance interest payments thereafter, as shown in the bank's statement of account, copied above, without further proof of an agreement of extension, constitute sufficient evidence as a matter of law to sustain the finding by the trial court made in this case, in effect that the maturity of the notes were, as between the maker and holder, extended by contract in writing to the respective dates of termination of the last six months period for which interest was paid in advance, within the meaning of article 5539, copied above?

2. In order for the plaintiff to invoke the suspension of the statute of limitation for one year, by reason of the death of Edward R. Holden, under the provisions of article 5538, did it have the burden of showing that there had been no administration upon the estate of Edward R. Holden, or was it incumbent upon the defendant to show the lack of such administration to reduce the period of such suspension to a shorter time than twelve months?

3. Was the suit to foreclose the lien as against Mrs. Pauline B. Jolly barred by the statute of limitation of four years, under the provisions of articles 5521, 5522 or 5523, even though it be said that action to recover on the notes was not barred by limitation?"

The purpose of the letter from Edward R. Holden, Sr., to the bank was to secure an extension of the time of the maturity of the notes from that expressed therein to the expiration of such time as he might pay interest in advance. The acceptance by the bank of the payments made as proposed in the letter shows its assent to such proposal, and constituted an agreement to extend the maturity dates to a time other than that expressed in the notes. The letter signed by Holden evidenced his agreement to such extension, and, if living, he could not be heard to say that he had not in writing agreed that the maturity dates of his notes had been extended. At the time of his death the notes as modified by the extension agreement had not become due and no cause of action had accrued.

The burden of proof was on defendant, Mrs. Jolly, to show that the notes sued on were barred by the statute of limitation, and, it having been shown that the maker of the notes had died at such time as to suspend the statute of limitation under Article 5538, the burden still remained on her to show that, notwithstanding such suspension,

the notes were barred. The law does not indulge in a presumption that an administration has been begun upon the estate of a deceased person in time to prevent the suspension of a statute of limitation from having the effect to defeat a plea of limitation. That there has been such an administration upon the estate is a fact necessary to be proved in order to sustain the limitation plea.

Articles 5521, 5522, and 5523 of the Revised Civil Statutes of 1925 are as follows:

"Art. 5521. Purchase money or mortgage lien notes relating to real estate shall conclusively be presumed to have been paid after four years from the date of maturity of such notes unless extended as provided by law.

"Art. 5522. When the date of maturity of either debt referred to in either of the foregoing articles is extended, if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the party or parties obligated to pay such indebtedness as extended and filed for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after maturity of the notes as provided in such extension, the same as in the original contract and the lien shall so continue for any succeeding or additional extension so made and recorded. The date of maturity set forth in the deed of conveyance or deed of trust or mortgage, or the recorded renewal and extension of the same, shall be conclusive evidence of the date of maturity of the indebtedness therein mentioned. Provided the owner of the land and the holder of the note or notes may at any time enter into a valid agreement renewing and extending the debt and lien, so long as it does not prejudice the rights of lien holders or purchasers subsequent to the date such liens became barred of record under laws existing prior to the taking effect of, or under this Act; as to all such lien holders or purchasers any renewal or extension executed or filed for record after the note or notes and lien or liens were, or are, barred of record and before the filing for record of such renewal or extension, such renewal or extension shall be void.

"Art. 5523. No power of sale conferred by a deed of trust or other mortgage on real estate executed subsequent to the 14th day of July, 1905, and prior to the 1st day of July, 1913, shall be enforced after the expiration of ten years from the maturity date of the indebtedness secured thereby, and no power of sale conferred by any deed of trust or other mortgage on real estate executed on or subse-

quent to the 1st day of July, 1913, or that may hereafter be executed, shall be enforced after the expiration of four years from the maturity of the indebtedness secured thereby, and any such sale under such powers after the expiration of such times, shall be void, and such sale may be enjoined and the lien created in any such deeds of trust or mortgages as were executed subsequent to the 14th day of July, 1905, and prior to the 1st day of July, 1913, shall cease to exist ten years after the maturity date of the debt secured thereby, and as to all deeds of trust or mortgages as were executed on or subsequent to the 1st day of July, 1913, or that may hereafter be executed, the lien created thereby shall cease to exist four years after the maturity of the debt secured thereby; provided, if several obligations are secured by said mortgage or deed of trust, the same may be enforced at any time prior to four years after the note or obligation last maturing has matured and may be enforced as to all notes and obligations not then barred by the four years statute of limitations; provided, the lien created by such deeds of trust or other mortgages may be extended by an agreement in writing acknowledged by the parties thereto and filed and recorded in the manner provided for the acknowledgment and record of conveyance of real estate."

We have concluded that the intention of the Legislature in enacting Article 5522 was to provide that, as to those purchasing lands or acquiring liens on lands after four years has elapsed from the date of maturity of debts as shown by the recitals of instruments duly recorded evidencing a lien on such lands, it shall be conclusively presumed that such debts had been paid and that such liens no longer exist. Mrs. Jolly is not a lien holder. There is no showing that she has ever acquired a lien on the land. If she could be considered a purchaser of the land under deed from Holden to her, executed on the same day she had executed deed to him, such purchase occurred before the mortgage was executed by Holden. And, even had the recorded mortgage recited the maturity date of the notes, she is not shown to have purchased the land more than four years after such maturity date. The provision that if the contract of extension "is signed and acknowledged as provided for in the law relating to execution of deeds of conveyance by the party or parties obligated to pay such indebtedness as extended and filed for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after the maturity of the notes as provided in such extension," does not have the effect to prescribe an exclusive method of extending the date of

maturity of either notes or liens given to secure the payment thereof as between the maker and holder of such notes. Nor does it have this effect as between the holder of such notes and others, who have not become purchasers of the land, or holders of liens thereon acquired more than four years after the maturity of such notes. Holden had by his letter in writing suggested and consented to the extension of the maturity dates of his notes. He was in law bound by such extension. At the time of his death the notes as extended had not matured. It is not shown that, excluding the time the statute of limitation was suspended by reason of his death, four years elapsed from the date of the maturity of any of the notes as extended to the time this suit was filed.

The provisions of Article 5523 to the effect that mortgages on real estate shall cease to exist four years after the maturity of the debt secured thereby and shall not be enforced, furnishes Mrs. Jolly no grounds for defeating the lien on a plea of limitation. The debt evidenced by the notes had been legally extended and four years, under the provisions of our statutes of limitation, had not elapsed. We have found it unnecessary to construe that portion of Article 5523 relating to limitation where several obligations are secured by mortgage. Neither of the obligations here sued on are barred and that portion of the article is wholly inapplicable to this case.

Had the notes become barred before Holden in writing agreed to the extension of payment, plea of limitation might have been available to Mrs. Jolly. Holford v. Patterson, 113 Texas, 410, 257 S. W., 213. In this case, however, this court, citing Templeman v. Kempner, 223 S. W., 293 (Writ of error refused), and Allison-Richey Gulf Coast Company v. Welder, 220 S. W., 392, says:

"Because an entirely different question was presented, it was held that so long as the debt was not barred land charged with its payment might be bound by a contract in extension of the debt, between the original debtor and the holder of the lien, though the land had passed from the debtor to a subsequent purchaser prior to the date of the extension contract."

We recommend that the first question be answered in the affirmative; that answer to the second question be that the burden of proof was on defendant to show that the suspension of the statute of limitation caused by the death of Holden was not for such length of time as to defeat the plea of limitation; and that the third question be answered in the negative.

The opinion of the Commission of Appeals answering certified question is adopted, and ordered certified.

C. M. Cureton, Chief Justice.

### ON MOTION FOR REHEARING.

Mr. Presiding Judge HARVEY delivered the opinion of the Commission of Appeals, Section A.

In her motion for rehearing, the appellant Pauline B. Jolly assails the holding made in our original opinion, written by Judge Bishop, to the effect that the burden of proof was on the appellant, in support of her plea of limitation, to show that an administration had been opened upon the estate of Edward R. Holden, Sr.. within twelve months after his death. Article 5538 of the Revised Statutes reads as follows:

"In case of the death of any person against whom or in whose favor there may be a cause of action, the law of limitation shall cease to run against such cause of action until twelve months after such death, unless an administrator or executor shall have sooner qualified according to law upon such deceased person's estate; in which case the law of limitation shall only cease to run until such qualification."

The general rule is to the effect, as is asserted by the appellant, that one who attempts to bring himself within any saving exception to the statutes of limitation, has the burden of proving the facts coming within the saving exception. We are of the opinion, however, that this burden, which was on the appellee in this case, was discharged by proof of the fact of death of Edward R. Holden, Sr., and the date thereof. By virtue of the first or principal clause of the above statute, the running of the statute of limitation against the appellee's claim was suspended for the fixed period of twelve months. Under the excepting clause to the first clause, this period of suspension was subject to be tolled by the opening of an administration upon Holden's estate within such period. It seems clear that the burden was on the appellant to prove this tolling fact, if she desired to avail herself of the saving exception to this suspension statute. In the case of Groesbeck v. Crow, 91 Texas, 76, 40 S. W., 1029, Judge Brown, speaking for the court with reference to this statute, said:

"The Legislature saw fit to adopt the policy of suspending the statute (of limitation) for one year or until administration should be had, in all cases, and we think that if a reason were necessary to

be given to sustain the law it could be found in the fact that as a general rule it requires time to determine whether the estate needs administration or not, and also to arrange for the proper conduct of such administration."

If this is the true reason for the passage of this statute, and we think it is, then courts will not indulge the presumption that an administration was opened upon the estate of the decedent during the twelve months period which the statute allows interested parties for the ascertainment of the need of administration and the making of arrangements for the proper conduct thereof.

The third question which is certified herein by the Court of Civil Appeals reads as follows:

"3. Was the suit to foreclose the lien as against Mrs. Pauline B. Jolly barred by the statute of limitation of four years, under the provisions of articles 5521, 5522 or 5523, even though it be said that action to recover on the notes was not barred by limitation?"

The articles mentioned in this certified question are those of the Revised Civil Statutes of 1925, and in our original opinion we predicated our answer to the above question upon the articles named therein. But the appellant, in her motion for rehearing, points out the fact that the present suit was filed before such statutes became effective, and that the question as certified really has reference to Articles 5693 and 5695 of the Revised Statutes of 1911, as same were amended by the Act of 1913. The articles mentioned in the above question are in some respects worded differently from those last mentioned. We therefore withdraw what is said in our original opinion relative to said articles of the Revised Statutes of 1925, as not being germane to the case; and we shall treat the above certified question as having reference to Articles 5693 and 5695, mentioned above. Said Article 5693 reads as follows:

"No power of sale conferred by any deed of trust or any mortgage on read (real) estate heretofore executed, or that may hereafter be executed, shall be enforced after the expiration of four years from the maturity of the indebtedness secured thereby, and any sale under such power after the expiration of such time shall be void, and such sale may be enjoined and the lien created in such mortgages or deeds of trust shall cease to exist four years after the maturity of the debt secured thereby. Provided, if several obligations are secured by said mortgage or deed of trust, the same may be enforced at any time prior to four years after the note or obligation last maturing

has matured and may be enforced as to all notes or obligations not then barred by the four years statute of limitations."

The relevant portions of Article 5695 read as follows:

"When the date of maturity of either debt referred to in either of the foregoing articles is extended, if the contract of extension is signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the party or parties obligated to pay such indebtedness as extended and filed for record in the county clerk's office in the county in which the land is situated, the lien shall continue and be in force until four years after maturity of the notes as provided in such extension, the same as in the original contract and the lien shall so continue for any succeeding or additional extension so made and recorded. The date of maturity set forth in the deed of conveyance or deed of trust or mortgage or the recorded renewal and extension of the same shall be conclusive evidence of the date of maturity of the indebtedness therein mentioned." * * *

It is our opinion that the above quoted provisions of Article 5695 were not intended by the legislature to have application where an unbarred lien is extended by the parties to it, and no other persons are affected by the extension except those holding under voluntary conveyance from the mortgagor in subordination to the lien. We found this conclusion upon the holding and sound reasoning of Judge Powell in the case of Watson v. First National Bank, 285 S. W., 1050. In that case it was held, and we think properly so, that notwithstanding the extension of the lien there in question did not conform to the requirements of the above quoted provisions of Article 5695, it was binding on the parties to it.

Although the extension agreement executed by Holden does not expressly extend the deed of trust lien, as did the instrument of extension in the Watson case, that fact becomes of no importance here. The bank had no notice of the deed of reconveyance from Holden to Mrs. Jolly at the time the deed of trust was executed; such deed of reconveyance is not supported by a valuable consideration; the extension was not an attempt by the parties thereto to recharge the property with a lien that had ceased to exist, for it was made before the lien became barred. For these reasons Mrs. Jolly had no rights which she could urge against the effective operation of the extension agreement.

The rule has been long established in this state that the lien by which a debt is secured is incident to the debt; and that a written

extension of the maturity date of the debt, by the debtor, operates as an extension of the lien also, unless the extension agreement shows otherwise. In legal effect the status of Mrs. Jolly with respect to the land, so far as the bank was concerned, was that of one acquiring the land under voluntary conveyance from Holden, the mortgagor, while the mortgage lien remained subsisting. Whatever may be the effect of the above quoted provisions of Article 5695 in other respects, it may be safely concluded that the Legislature did not intend thereby to restrain the operation, in cases like this one, of the long established rule just mentioned.

The deed executed by Mrs. Jolly and husband to Holden for the purpose of enabling him to borrow money on the land, and the deed of reconveyance by Holden to Mrs. Jolly, appear to have been executed in the same transaction. No restrictions appear to have been imposed, either expressly or impliedly, concerning the maturity dates of the indebtedness with which Holden was to charge the land. Even if Mrs. Jolly should be regarded as never having parted with the title to the land, we are not sure that a court of equity would not disregard the form of the transaction and treat it as vesting Holden with power to mortgage the land and to control, as he saw fit, the maturity dates of the indebtedness covered by the mortgage.

We recommend that Certified Question No. 3, in the amended form that we have treated it, be answered in the negative, and that the appellant's motion for rehearing be overruled.